2016 JUN -6 AM II: 03



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of: )
) DIVISION ONE
LESLIE PATTEN, )
) No. 73651-5-I
          Respondent, )
) UNPUBLISHED OPINION
   and )
)
DAVID PATTEN, )
)
          Appellant. ) FILED: June 6, 2016
)

DWYER, J. — David Patten[1] appeals from a default dissolution decree, entered after he failed to timely participate in the underlying proceedings. He contends that the superior court improperly denied his motion to vacate the default decree. Because the superior court did not abuse its discretion by concluding that David failed to establish that his failure to participate was due to excusable neglect, we affirm.

I

Leslie and David Patten were married for 17 years and had three children before Leslie filed a petition for dissolution, a summons, and a motion for temporary orders on August 8, 2013. David was served the following day. The petition asked for a fair and equitable division of all property and liabilities to be

---

[1] Because the parties share a surname, we refer to each by his or her given name.

determined by the court at a later date, child support and day care expenses, approval of the proposed parenting plan, award of tax exemptions for the dependent children, change of Leslie's name, and attorney fees.

David appeared by telephone at the August 23, 2013 hearing for temporary orders, asking for a continuance in order to retain a lawyer. The commissioner granted a continuance to September 20, 2013. The September 20 hearing was again continued to October 17, 2013 because David still had not responded to the pleadings. After David failed to appear at the October 17 hearing, the commissioner entered temporary orders.

David then failed to provide any financial support for the children, in violation of the temporary orders. He likewise failed to comply with the case schedule and did not appear at the status conference on December 27, 2013. At the status conference, the court acknowledged that Leslie planned to file a motion for default due to David's failure to respond to the petition, and rescheduled the conference to April 4, 2014, unless final orders were entered by March 28, 2014.

David was incarcerated beginning in January 2014 for a hit and run incident.

On January 17, 2014, Leslie served David with an amended petition for dissolution. The following day, Leslie also served David with the motion and declaration for default, along with proposed versions of the orders for default, decree of dissolution, final parenting plan, order of child support, final restraining order, and findings of fact and conclusions of law. David was also served with

notice that the motion for default would be heard on February 18, 2014.

Leslie filed the amended petition with the court on January 21, 2014. Nearly three weeks passed after David was served with the amended petition for dissolution and motion for default, yet he made no effort to answer the amended petition for dissolution or to respond to the motion for default. As a result, on February 6, 2014, Leslie filed the motion for default, supporting declaration, and notice of hearing, setting the hearing for February 18, 2014.

David had not responded to any of Leslie's pleadings by the time of the hearing on the motion for default, nor did he appear at the hearing. Accordingly, on February 18, 2014, the superior court found David in default and entered final orders that were consistent with the relief Leslie sought in her amended petition for dissolution. The final orders included a restraining order against David effective until January 30, 2019.

David was released from jail on April 22, 2014, just two months after the final default orders were entered. Nevertheless, he did not file a motion to vacate the default decree, order of child support, and parenting plan until February 18, 2015. He did not file an order to show cause until March 3, 2015, and did not serve Leslie with any paperwork until March 19, 2015.

The basis for his motion to vacate under CR 60(b)(1) was for "an irregularity in obtaining this judgment or order given that they did not wait 90 days after the service of the amended summons and petition."[2] David also stated that

---

[2] Appellant has abandoned this argument on appeal.

when the original petition for dissolution was filed, he "understood that the court was to make a fair and equitable division of property at a later date." He "took that to mean that [he] would receive something from [the] marriage," maybe even "one-half."

The Superior Court denied David's motion to set aside the final orders, concluding that he "did not demonstrate a legal basis to set aside the orders" under White v. Holm, 73 Wn.2d 348, 438 P.2d 581 (1968). In support of its conclusion, the court found that David "did not demonstrate excusable neglect," "did not act with due diligence after he became aware of entry of the default orders," and "did not provide substantial evidence to support a conclusion that the trial court would make a different distribution of assets." The court also determined that "[Leslie] would suffer a hardship if the orders were set aside at this point."

David moved for reconsideration, which the superior court denied. David appeals.

II

David contends that the superior court abused its discretion by denying his motion to vacate the dissolution decree. This is so, he asserts, because his failure to participate was due to excusable neglect. We disagree.

We review a superior court's ruling on a motion to vacate a default judgment for an abuse of discretion. Little v. King, 160 Wn.2d 696, 702, 161 P.3d 345 (2007). A superior court abuses its discretion only when its decision is manifestly unreasonable or is based on untenable grounds or untenable reasons.

-4-

Luckett v. Boeing Co., 98 Wn. App. 307, 309-10, 989 P.2d 1144 (1999) (quoting Lane v. Brown & Haley, 81 Wn. App. 102, 105, 912 P.2d 1040 (1996)). Unchallenged findings of fact are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992). Unchallenged conclusions of law become the law of the case. King Aircraft Sales, Inc. v. Lane, 68 Wn. App. 706, 716, 846 P.2d 550 (1993).

Default judgments are generally disfavored in Washington. "We prefer to give parties their day in court and have controversies determined on their merits." Morin v. Burris, 160 Wn.2d 745, 754, 161 P.3d 956 (2007). "But we also value an organized, responsive, and responsible judicial system where litigants acknowledge the jurisdiction of the court to decide their cases and comply with court rules." Little, 160 Wn.2d at 703. "Our primary concern in reviewing a trial court's decision on a motion to vacate is whether that decision is just and equitable." TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 200, 165 P.3d 1271 (2007). "'What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.'" Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 582, 599 P.2d 1289 (1979) (quoting Widucus v. Sw. Elec. Coop., Inc., 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)). "Abuse of discretion is less likely to be found if the default judgment is set aside." Griggs, 92 Wn.2d at 582.

A default judgment may be set aside in accordance with CR 60(b). CR 60(b)(1) states, in relevant part:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order.

The party seeking to vacate a default judgment pursuant to CR 60(b)(1)

must establish

(1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; *and* (4) that no substantial hardship will result to the opposing party.

White, 73 Wn.2d at 352 (emphasis added). The first two factors are primary.

Rosander v. Nightrunners Transp., Ltd., 147 Wn. App. 392, 404, 196 P.3d 711

(2008).

David's substantive briefing relative to this issue was limited to the

following statements.

[David] has a valid defense because the wife was awarded all the assets and the trial court never even addressed the issue whether it was fair and equitable. . . .
He could not appear because he was in jail and had no reasonable method to appear in the court. He could not find an attorney he could afford with a retainer until the year was about to expire. There is no substantial hardship because [Leslie] can still raise all the defenses she was entitled to.

These bare assertions do not satisfy David's burden.

Regarding the supposed lack of justice and equity in the asset distribution,

as the superior court explained, David's assertion "isn't a defense. That's

-6-

dissatisfaction. A defense would be articulating the evidence that the Court would look at and make a determination that the assets should be distributed differently."[3] Regarding his inability to "appear" at the hearing on Leslie's motion for default, David conflates his appearance with his participation. Default was proper in this case because David never responded to either of Leslie's petitions. Such response did not require him to be physically present at the relevant hearing. Moreover, David's statement that he anticipated that the result of the proceedings, even without his participation, would be a more favorable distribution of assets for him (possibly even "one-half") indicates that his lack of response was due not to excusable neglect but, instead, to conscious choice. He seems now to regret his lack of response, but this does not change the true motivation for his behavior at the time.

Even were his incarceration to constitute excusable neglect, a finding that we do not make, it did not prevent him from exercising due diligence in moving to vacate the default. David's proffered explanation for his extended delay in filing the motion to vacate the default judgment is that he could not afford an attorney. However, he cites no authority for the proposition that inability to pay for an attorney excuses the due diligence requirement, and we will not endorse such a rule.[4] Finally, we are unpersuaded by David's assertion, which is contrary to the

---

[3] Furthermore, contrary to David's assertion, the superior court did find that the property division was fair and equitable. The court's findings of fact and conclusions of law specifically stated, "The distribution of property and liabilities as set forth in the decree is fair and equitable."

[4] Indeed, as the superior court noted, such a rule would be contrary to the principles of CR 11.

It isn't that the Court doesn't understand the difficulties that people have when they don't have an attorney when they're trying to get money to get an attorney. The problem is the rules are there for everyone. . . . Most people don't

superior court's finding, that there would be no hardship associated with vacating the default decree. The dissolution decree and associated orders settled many aspects of the Pattens' lives. Thus, as the superior court recognized, there is particular value to "liv[ing] with and work[ing] under" this type of judgment and, correspondingly, there would be special hardship associated with upending either party's expectations related to the judgment.

In sum, the superior court's findings are supported by the record and it did not abuse its discretion by denying David's motion to vacate the default dissolution decree entered after he failed to timely respond to the underlying dissolution petition.[5]

III

David also raises several new claims of error for the first time on appeal.[6] He contends that these claims are permitted because, he asserts, they establish that the superior court herein lacked jurisdiction to enter the default judgment. Because his claims of error do not implicate jurisdiction, his claims fail.

Jurisdiction is comprised of two components: personal jurisdiction and subject matter jurisdiction. Subject matter jurisdiction "refers to a court's ability to entertain a type of case, *not to its authority to enter an order in a particular case.*" In re Marriage of Buecking, 179 Wn.2d 438, 448, 316 P.3d 999 (2013) (emphasis

---

have the funds to have an attorney. CR 11 indicates that we can't treat people differently because they don't have attorneys.

[5] Although not the focus of its ruling, the superior court also determined that David's motion to vacate was not timely. Because the court's determination regarding excusable neglect is sufficient to justify its order, we do not address this aspect of the court's ruling.

[6] Specifically, he contends that the superior court lacked jurisdiction because (1) service of the motion for default was "premature" pursuant to CR 55, (2) the court was given insufficient notice of the hearing on the motion for default under the local rule, and (3) the default judgment included a final restraining order even though, he asserts, the "complaint did not ask for one."

-8-

added). Thus, "if a court can hear a particular class of case, then it has subject matter jurisdiction." Buecking, 179 Wn.2d at 448.

Under RCW 26.09.030, a party who is, or is married to, a resident of this state may petition for dissolution of marriage, alleging that the marriage is irretrievably broken. When 90 days have elapsed since the petition was filed and from the date when the respondent was served with the summons, the court "shall" enter a decree of dissolution "[i]f the other party . . . does not deny that the marriage . . . is irretrievably broken." RCW 26.09.030(a). In entering the decree, the court may enter an order of child support, maintenance, property division, and a restraining order. RCW 26.09.050(1). In Buecking, the court held that if the residency requirement under RCW 26.09.030 is met, the superior court has full jurisdiction over the proceedings and authority to grant "the relief contemplated by the statute." 179 Wn.2d at 452.

Herein, the superior court had jurisdiction over David personally and over the subject matter. The residency requirement was met as both David and Leslie have at all times during these proceedings been residents of Washington. Because residency is the prerequisite to the superior court's exercise of jurisdiction under RCW 26.09.030, it had the authority to preside over the parties' dissolution case. In addition, the dissolution decree, and the orders entered along with it, were the type of relief "contemplated by the statute." Accordingly, the superior court exercised full and proper personal and subject matter jurisdiction over the final orders entered by default.

Because, contrary to David's contention, his additional claims do not

demonstrate that the superior court lacked jurisdiction over the proceedings herein, he has not shown that they may be raised for the first time on appeal.[7]

Affirmed.

We concur:

---

[7] David also assigns error to the superior court's denial of his motion for reconsideration. But he offers no argument on this point. Accordingly, he fails to show that the court abused its discretion in denying the motion.